IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-02454-PAB-MEH

HEATHER SCADDEN,

     Plaintiff,

v.

WEINBERG, STEIN AND ASSOCIATES, LLC,

     Defendant.

---

### ORDER

---

     This matter is before the Court on Plaintiff's Motion for Default Judgment [Docket No. 13] filed by plaintiff Heather Scadden on January 31, 2013.  The Court's jurisdiction is based on 28 U.S.C. § 1331.

## I. BACKGROUND

     On September 14, 2012, Ms. Scadden brought this case against Weinberg, Stein and Associates, LLC ("Weinberg") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), *see* 15 U.S.C. § 1692 *et seq.*  In her complaint, Ms. Scadden alleges that she is a natural person allegedly obligated to pay a debt arising out of a transaction for personal, family, or household goods or services.  Docket No. 1 at 2, ¶ 3, 7.  She alleges that Weinberg is a corporation that, using the postal and telephone system, regularly attempts to collect consumer debts allegedly due to another.  Docket No. 1 at 2, ¶ 5.  She further alleges that:

        •    Defendant began contacting Plaintiff and placing collection calls to Plaintiff before June 15, 2012.

- [W]ithin one year prior to the filing of this complaint, Defendant lied to Plaintiff, telling her that she committed bank fraud, and that it would contact the sheriff in her county, who would show up at her front door, presumably to arrest her, when that was not true.

- [W]ithin one year prior to the filing of this complaint, Defendant lied to Plaintiff, telling her that it would contact her place of employment to let it know that she was committing check fraud, and that it could garnish her wages, when it cannot do those things itself and none of that was true.

- Defendant, during communications with Plaintiff, within one year from the filing of this complaint, did not state that Defendant was a debt collector, attempting to communicate a debt, and that any information would be used for that purpose.

- As a result of the acts alleged above, Plaintiff suffered emotional distress resulting in her feeling stressed, amongst other negative emotions.

Docket No. 1 at 2-3, ¶¶ 8-12.  Weinberg has not responded to the complaint or otherwise appeared before the Court in this matter.

On December 17, 2012, Ms. Scadden moved for entry of default [Docket No. 10] pursuant to Federal Rule of Procedure 55(a).  The clerk entered default against Weinberg the following day.  Docket No. 11.  On January 31, 2013, Ms. Scadden moved for entry of default judgment.  Docket No. 13.  Ms. Scadden seeks $5,815.55 in damages, comprising $1,000.00 in statutory damages, $4,152.50 in attorney's fees, and $663.05 in court costs.  Docket No. 13 at 12.  Weinberg has not responded to Ms. Scadden's motion for default judgment.

## II.  DISCUSSION

### A.  Default Judgment

In order to obtain a judgment by default, a party must follow the two-step process

2

described in Federal Rule of Civil Procedure 55.  First, she must seek an entry of default from the Clerk of the Court under Rule 55(a).  Second, after default has been entered by the Clerk, the party must seek default judgment according to the strictures of Rule 55(b).  *See Williams v. Smithson*, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "'committed to the district court's sound discretion.'"  *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits."  *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation marks and citations omitted).  "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party."  *Id*.  It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights."  *Id*. at 733.  When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment."  *Seme v. E & H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D.Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence.  *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure.  We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.  The threat of

judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against defendants, the well-pleaded allegations in the complaint are deemed admitted. *See Olcott*, 327 F.3d at 1125; *see also* 10A CHARLES WRIGHT, ARTHUR MILLER & MARY KANE, FED. PRAC. & PROC. § 2688 (3d ed. 2010).

"Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A WRIGHT & MILLER § 2688, at 63. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation marks and citation omitted).

In this case, the Clerk of Court entered default against Weinberg on December 18, 2012 [Docket No. 11]. Accordingly, the Court accepts the well-pleaded facts in Ms. Scadden's complaint as true. Specifically, the Court accepts as true Ms. Scadden's allegations that (1) she is a consumer and Weinberg is a debt collector under the

FDCPA, Docket No. 1 at 2, ¶¶ 3-7; (2) Weinberg contacted Ms. Scadden between September 14, 2011 and September 14, 2012, in an attempt to collect a consumer debt from her, Docket No. 1 at 2, ¶ 6; (3) in the course of attempting to collect a debt from Ms. Scadden, Weinberg told her that she had committed bank fraud, that it would contact the sheriff in her county who would show up at her front door, that it would inform her employer that she had committed check fraud, and that it could garnish her wages; and (4) in the course of attempting to collect a debt from Ms. Scadden, Weinberg did not state that it was a debt collector attempting to collect a debt.  Docket No. 1 at 2-3, ¶¶ 9-11.  The Court begins its analysis by considering whether these facts "constitute a legitimate cause of action."  10A WRIGHT & MILLER § 2688, at 63.

### B.  FDCPA Violations

The FDCPA prohibits, *inter alia*, the use of "unfair or unconscionable means" as well as "false, deceptive, or misleading representation[s] or means" in attempting to collect a debt.  15 U.S.C. §§ 1692e, 1692f.  The FDCPA specifically identifies the following as impermissible deceptive practices:

- The threat to take any action that cannot legally be taken or that is not intended to be taken.

- The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

- The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

- The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in

> subsequent communications that the communication is from a debt
> collector . . . .

15 U.S.C. §§ 1692e(5), (7), (10), (11).  The FDCPA also provides that,

> without the prior consent of the consumer given directly to the debt collector,
> or the express permission of a court of competent jurisdiction, or as
> reasonably necessary to effectuate a postjudgment judicial remedy, a debt
> collector may not communicate, in connection with the collection of any debt,
> with any person other than the consumer, his attorney, a consumer reporting
> agency if otherwise permitted by law, the creditor, the attorney of the
> creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

Ms. Scadden argues that Weinberg violated §§ 1692e and 1692f of the FDCPA
by telling her that she had committed bank fraud, that the county sheriff would show up
at her door, that Weinberg would inform her employer that she had committed check
fraud, and that Weinberg could garnish her wages, in addition to failing to properly
identify itself as a debt collector.  Docket No. 1 at 2-3, ¶¶ 8-12.

First, there is no crime in Colorado denominated as "bank fraud."  *See generally*,
Colo. Rev. Stat. § 18-5-101 *et seq.* ("Offenses Involving Fraud").  Second, while it is a
crime to knowingly write a check without sufficient funds to pay it and with the intent to
defraud, Colo. Rev. Stat. § 18-5-205(2), Weinberg has no authority to prosecute Ms.
Scadden criminally nor to cause the county sheriff to appear at Ms. Scadden's home.
*See* Colo. Rev. Stat. § 20-1-102(1)(a) ("Every district attorney shall appear in behalf of
the state and the several counties of his district . . . [i]n all indictments, actions, and
proceedings which may be pending in the district court in any county within his district
wherein the state or the people thereof or any county of his district may be a party");
Thus, these statements constitute false representations that Ms. Scadden committed a

6

crime, made in order to disgrace her, in violation of §§ 1692e(7) and (10).

Third, Weinberg cannot–absent Ms. Scadden's express consent, a court order, or an enforceable judgment–communicate with Ms. Scadden's employer regarding her debt.  15 U.S.C. § 1692c(b).  Fourth, Weinberg cannot garnish Ms. Scadden's wages, absent an enforceable judgment.  Colo. Rev. Stat. § 13-54.5-101, *et seq*.  Thus, statements to the effect that Weinberg could or would pursue these actions were threats to take action that could not legally be taken or that Weinberg did not intend to take, in violation of § 1692e(5).  Finally, Weinberg failed to identify itself as a debt collector in all communications in which it was attempting to collect a debt, in violation of § 1692e(11).

In sum, the allegations set forth in Ms. Scadden's complaint, taken as true, are sufficient to establish that Weinberg violated §§ 1692e(5), (7), (10), (11), and 1692c(b) of the FDCPA.

### C.  Statutory Damages

Ms. Scadden seeks $1,000.00 in statutory damages.  Docket No. 13 at 3.

The FDCPA provides for statutory damages in an amount "as the court may allow, but not exceeding $1,000."  15 U.S.C. § 1692k(2)(A).  In determining the amount of statutory damages to award, courts are to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).  For example, in *Sterling v. Am. Credit & Collections, LLC*, No. 11-cv-03113-DME-BNB, 2012 WL 3553757, at *4 (D. Colo. Aug. 16, 2012), the court awarded $250.00 in statutory damages because it found that the violation in question–sending plaintiff a letter falsely

stating she owed a debt that had already been settled–"while more than *de minimis* or technical, falls on the lower end of the spectrum of egregiousness."  The court noted that the letter did not take a hostile tone, threaten legal action, "raise the specter of criminal prosecution or incarceration," or indicate a larger "pattern of frequent or persistent conduct."  *Id*.; *see also id.* at \*3 (reviewing cases awarding statutory damages under the FDCPA).

Ms. Scadden's allegations, taken as true, establish violations of multiple FDCPA provisions.  *See* 15 U.S.C. § 1692e.  In addition, Weinberg threatened to take legal action and "raise[d] the specter of criminal prosecution."  *See* 2012 WL 3553757at \*4.  However, Ms. Scadden does not provide any information regarding the frequency of Weinberg's communications or their tone.  Balancing the falsity of Weinberg's statements against the absence of any indication that it engaged in a pattern of frequent or persistent misconduct, the Court finds that an award of $500.00 in statutory damages is appropriate.

### D.  Attorney's Fees

Ms. Scadden seeks $4152.50 in attorney's fees and $663.05 in costs.  Docket No. 13 at 12.

Section 1692k(a) of the FDCPA provides that a successful plaintiff may seek from defendant a "reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  As Ms. Scadden has prevailed in this action, she is entitled to recover her reasonable attorney's fees.

To determine a reasonable fee request, a court must begin by calculating the

"lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

### 1. Hourly Rate

Ms. Scadden requests attorney's fees calculated at the rate of $325.00 per hour and paralegal fees at the rate of $150.00 per hour. Docket No. 13 at 17-18, ¶ 5.

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). In order to satisfy her burden, plaintiff must produce "satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Unless the subject of the litigation is so unusual or requires such special skills that only an out-of-state lawyer possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

In support of her attorney's hourly rate, Ms. Scadden relies on (1) the 2007 United States Consumer Law Attorney Fee Survey[1], which lists the average hourly rate for attorneys in the Western United States with six to ten years of experience as $250.00 and the rate for attorneys with eleven to nineteen years as $325.00, Docket No. 13 at 40; (2) the 2004 through 2009 Laffey Matrix, which lists the average hourly rate for attorneys with six to ten years of experience as $330.00 and the rate for attorneys with eleven to nineteen years as $410.00; and (3) the fact that Ms. Scadden's attorney, Thomas Martin, III, has been licensed to practice law in California since 2002. Docket No. 13 at 9-12, 17-18.

First, the Court notes that there has been no showing that the services provided in this case were so "unusual" or "special" to require out-of-state counsel, *Bangerter*, 61 F.3d at 1510, and thus the Court will calculate fees based on prevailing rates in the Denver metropolitan area.  Second, even assuming that Mr. Martin was admitted to the California bar as early as possible in 2002, he would only have been in practice for a little over ten years for the duration of the case.  Thus, it is appropriate to apply rates commensurate with ten years of experience.  Third, the Laffey Matrix is evidence of prevailing market rates in the Washington, D.C. area and thus is not germane to calculating rates in the Denver metropolitan region.  *See* Laffey Matrix – 2003-2013, http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf.

The weight of authority establishes that the prevailing rate in Colorado is $250.00

---

[1] Ms. Scadden's brief refers to the 2011 survey but the attached document is dated 2007.

per hour.[2]  Moreover, this figure accords with the Consumer Law Attorney Fee Survey amount for attorneys in the Western region with ten years of experience.  *See* Docket No. 13 at 40.  Accordingly, the Court concludes that $250.00 is a reasonable hourly rate in this district for attorneys with the same skill and experience as Mr. Martin.

In addition, the Consumer Law Attorney Fee Survey lists the median paralegal rate for the Western region as between $75.00 and $99.00.  Docket No. 13 at 53.  As Ms. Scadden has not provided any information regarding the skills or experience of the paralegals who worked on this case, the Court finds that $75.00 per hour is a reasonable rate.  *See Lockmon v. Thomas F. Farrell, P.C.*, No. 12-cv-02319-CMA-MEH, 2012 WL 6590426, at *3 (D. Colo. Dec. 18, 2012) ("the Court finds that the average rates set forth in the [Consumer Law Attorney Fee] Survey ($230 for attorneys, $75 for paralegals) are reasonable").

### 2.   *Number of Hours*

Ms. Scadden requests fees for 10.7 hours of attorney time and 4.5 hours of paralegal time.  Docket No. 13 at 14-15.

In determining the reasonableness of the hours expended, a court considers

---

[2] This holding is consistent with other decisions by this Court, *see Howard v. Midland Credit Mgmt., Inc.*, No. 11-cv-03123-PAB-BNB, 2012 WL 4359361 (D. Colo. Sept. 24, 2012), and from this District.  *See, e.g., Nuanes v. NCC Business Servs., Inc.*, No. 12-cv-0228-WJM-MJW, 2012 WL 5464598 (D. Colo. Nov. 9, 2012); *Castro v. First Nat'l Collection Bureau, Inc.*, No. 11-cv-02298-REB-KMT, 2012 WL 4468318 (D. Colo. Sept. 27, 2012); *Skaer v. Nat'l Action Fin. Servs., Inc.*, No. 08-cv-00422-REB-MJW, 2009 WL 724054 (D. Colo. Mar. 18, 2009); *Babeon v. Nat'l Action Fin. Servs., Inc.*, No. 08-cv-00027-JLK-CBS; *Miller v. Cavalry Portfolio Servs., LLC*, No. 08-cv-00772-ZLW-KLM; *Ocker v. Nat'l Action Fin. Servs., Inc.*, No. 08-cv-00421-REB-MJW, 2008 WL 4964772 (D. Colo. Nov. 18, 2008); *Harper v. Phillips & Cohen Assocs., Ltd*, No. 08-cv-01500-REB-KLM, 2009 WL 3059113 (D. Colo. Sept. 21, 2009).

several factors.  First, it considers whether the fees pertain to tasks that would ordinally

be billed to a client.  *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983),

*overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483

U.S. 711, 717 n. 4 (1987).  The Supreme Court has found non-compensable "purely

clerical or secretarial tasks [which] should not be billed at a paralegal rate, regardless of

who performs them."  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

Plaintiff must demonstrate that her counsel used "billing judgment" in winnowing down

the hours actually spent to those reasonably expended.  *Praseuth v. Rubbermaid, Inc.*,

406 F.3d 1245, 1257 (10th Cir. 2005).  If not, a court should take extra care to ensure

that an attorney has not included unjustified charges in his billing statement.  *Id*.  A

court should also consider whether the amount of time spent on a particular task

appears reasonable in light of the complexity of the case, the strategies pursued, and

the responses necessitated by an opponent's maneuvering.  *Id*.  Ultimately, the Court's

goal is to fix a fee that would be equivalent to what the attorney would reasonably bill

for those same services in an open market and fees will be denied for excessive,

redundant, and otherwise unnecessary expenses.  *Ramos*, 713 F.2d at 553.

A review of the time entries in this case reveals that 2.0 hours of plaintiff's

paralegal fee request is devoted to non-compensable clerical or administrative tasks,

namely, creating a client file and e-filing pleadings with the Court.  Docket No. 13 at 14.

Accordingly, the Court concludes that the reasonable number of hours spent by Ms.

Scadden's attorney in this case is 10.7 hours and the reasonable number of hours

spent by the paralegals is 2.5 hours.

### *3. Lodestar Amount*

Based on the aforementioned conclusions, the Court finds that the lodestar figure for plaintiff's attorney's fee request is $2,862.50 (10.7 hours multiplied by a $250.00 hourly rate plus 2.5 hours multiplied by a $75.00 hourly rate). This fee award is reasonable given the issues presented in this case and it is also adequate to attract competent counsel to similar cases without producing a windfall for attorneys. *Blum*, 465 U.S. at 893-94.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Default Judgment [Docket No. 13] is GRANTED in part and DENIED in part.  It is further

**ORDERED** that default judgment shall enter against defendant Weinberg, Stein and Associates, LLC.  It is further

**ORDERED** that plaintiff Heather Scadden shall be awarded $500.00 in statutory damages.  It is further

**ORDERED** that Ms. Scadden shall be awarded $2,862.50 in attorney's fees.  It is further

**ORDERED** that, within 14 days of the entry of judgment, Ms. Scadden may have her costs by filing a bill of costs with the Clerk of the Court.

DATED April 23, 2013.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge